```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION

CALANDRA BEAMON,                *

     Plaintiff,                 *

vs.                             *
                                        CASE NO. 4:14-CV-146 (CDL)
TYSON FOODS, INC.,              *

     Defendant.                 *

                                *
```

O R D E R

Calandra Beamon, a former employee of Tyson Foods, Inc. ("Tyson"), claims that her supervisor created a hostile work environment by showing her pornographic images on his cell phone and making inappropriate comments about her body. She further maintains that after she complained about her supervisor's conduct, her supervisor and Tyson retaliated against her. She has filed the present action against Tyson alleging claims for hostile work environment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981. Presently pending before the Court is Tyson's motion for summary judgment. Although the alleged conduct of Beamon's supervisor was boorish and inappropriate for the workplace, it was not sufficiently severe or pervasive to alter the terms and conditions of Beamon's

employment.  Therefore, under the law of this Circuit, Beamon's hostile work environment claim fails as a matter of law. Furthermore, Beamon has pointed to no adverse employment action taken by Tyson after she complained of the alleged harassment, and therefore, she cannot prevail on her retaliation claim.  For these reasons, as explained in more detail in the remainder of this Order, Tyson's motion for summary judgment (ECF No. 23) is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Beamon, the record establishes the following.

## I. The Harassment

Calandra Beamon is a black woman who was employed at Tyson's meat processing plant in Buena Vista, Georgia where she was supervised by John Schimek, a white male. Beamon claims that Schimek showed her videos on three occasions depicting black individuals engaged in sexual intercourse. Each time, Beamon glanced at the video for a few seconds and walked away.

The first incident occurred in December 2011 or January 2012. Schimek called Beamon into a room where they were alone. Pl.'s Dep. 37:17-19, ECF No. 20. Schimek then showed Beamon a video on his cell phone depicting black individuals engaged in sexual intercourse. Beamon looked at the video for less than two seconds, indicated that she did not want to see it, and left. *Id.* at 38:24-39:5.

Approximately one week later, Schimek said, "Calandra, look a here," and again showed Beamon a video on his cell phone depicting black people having sex. *Id.* at 40:21-25. Schimek also made a comment indicating his interest in black women's breasts. *Id.* at 40:19-41:4. On this occasion, Beamon glanced at the video for a couple of seconds, said she did not want to see it, and went back to work. *Id.* at 40:22-41:4.

Two or three days later, Beamon told Schimek that she was thinking about purchasing a new phone and that she liked his phone. *Id.* at 50: 10-23. As Schimek was showing Beamon the

clarity and color of the graphics on his phone, another video of black people having sex popped up. *Id.* at 50:20-23. Beamon quickly looked away and left.

Beamon contends that Schimek attempted to show her a fourth pornographic video, but she never saw it. On that occasion, which occurred in March 2012, Schimek told Beamon that he had something to show her and pulled out his cell phone. As soon as Beamon saw Schimek pull out his phone, she left. Beamon testified that she did not see anything on the phone, but she also said: "[I]n my heart I felt like I knew that he wanted to show me another movie." *Id.* at 55:6-8.

Shortly after this last incident, Beamon was working on her knees when Schimek told her that she was doing a good job and then said "I wasn't talking about the work you were doing, I was talking about your butt being up in the air." *Id.* at 61:1-18. From that point forward, Schimek frequently used an angry tone toward Beamon.

**II. Beamon Omits Schimek from Harassment Complaint to Tyson**

Instead of reporting Schimek's conduct to Tyson, Beamon twice denied that Schimek acted inappropriately. First, in April 2012, Beamon called Tyson's hotline and reported offensive comments made by two of her coworkers—neither of whom were Schimek. Beamon made no mention in her report of Schimek showing her pornographic videos, making sexually related

4

comments, or using an angry tone with her. In connection with the report, Beamon signed a written document affirming that she understood Tyson's anti-harassment policy and that she knew of no other problems that Tyson should address, other than gossiping. Pl.'s Dep. 82:23-83:6; Investigation Summary Form, ECF No. 26 at 184. Beamon did not report Schimek's behavior because she "felt like it was over." Pl.'s Dep. 83:14-17.

Although Beamon neglected to report Schimek's behavior to Tyson management, she complained about Schimek's conduct to a coworker. The coworker passed Beamon's complaint along to assistant plant manager Terry Idrell. Idrell asked Beamon if Schimek had harassed her, and Beamon replied no. *Id.* at 93:2-11. Beamon denied that Schimek had harassed her because she was afraid that she might lose her job if she reported it. *Id.* at 94:6-21.

### III. Beamon Reports Schimek's Conduct

On August 10, 2012, Beamon finally reported to Tyson human resources manager Towaya Holmes that Schimek had shown her pornographic videos and yelled at her. Tyson immediately conducted an investigation. Tyson ensured that Schimek did not work with Beamon while the investigation was ongoing. Winston Dep. 40:12-41:4, ECF No. 24. Tyson was unable to substantiate Beamon's accusations because it could not find a witness to corroborate Beamon's allegations regarding the pornographic

5

videos. Nonetheless, human resources manager Gregory Winston testified that Tyson retrained Schimek on the company's anti-harassment and retaliation policy. *Id.* Beamon contends that Tyson's investigation was inadequate because, according to Beamon, Tyson did not investigate her claim that Schimek yelled at her.

Beamon contends that after filing her complaint in August, Schimek's behavior worsened—he continued to yell at her, rolled his eyes, made "not happy" facial expressions, and walked up to her and sucked his teeth. Beamon Dep. 116:22-118:10. But when human resources followed up with Beamon in September, Beamon stated that she had not experienced any harassment since filing the initial complaint. Complaint Resolution Follow Up, ECF No. 26 at 191. She also signed a document stating that her complaint against Schimek had been thoroughly investigated and resolved. *Id.*

### IV. November 7 Altercation

On November 7, 2012, Schimek and Beamon were working together when Schimek began yelling at Beamon for not inputting her time in the computer. An altercation ensued, and Schimek told Beamon: "[W]e'll never be able to breathe the same air" and "I will never forget what you did to me." Pl.'s Dep. 120:24-121:3. Schimek then walked towards Beamon in a manner that made Beamon fear that he was about to hit her, although it is

6

undisputed that Schimek never touched Beamon or even raised his arm in an attempt to touch her.  *Id.* at 69:16-17.  At that point, a coworker intervened and Tyson upper management arrived at the scene within minutes to break up the altercation.

Tyson then held a meeting regarding the altercation, and human resources director Holmes conducted an investigation. Beamon testified that Holmes took her concerns seriously and listened attentively.  *Id.* at 104:2-8.  Tyson took measures to protect Beamon from future harassment, including having Beamon report to a female supervisor and putting Schimek on a separate schedule so that he and Beamon never worked together again.  *Id.* at 104:9-23.

Schimek resigned his employment with Tyson while the investigation was pending.  Tyson's investigation ultimately substantiated Beamon's allegations that Schimek harassed and retaliated against her.

V.   **Workers' Compensation Claims**

Beamon worked at Tyson for approximately another one and a half years without reporting any additional incidents of harassment.  She was never disciplined, demoted, or terminated. However, she claims that she was treated unfairly when Tyson initially insisted that she sign a general liability release in exchange for a workers' compensation settlement.  She also contends that Tyson purposefully delayed the consummation of her

7

settlement. That settlement arose from four workers' compensation claims she filed against Tyson in the summer of 2014. Tyson offered to settle the claims for $25,000 on the condition that Beamon sign a global release of all her potential claims against Tyson. Tyson contends that at the time it made the offer, it was unaware of Beamon's present hostile work environment lawsuit and that it was following its standard practice of conditioning workers' compensation settlement on signing a global release. Crosson Dep. 21:4-9; 22:21-23:22, ECF No. 22. Beamon made a counteroffer for $25,000 *without* a general release.

Tyson accepted Beamon's counteroffer two months later, on August 25, 2014. Beamon voluntarily resigned from Tyson two days later, on August 27.

## DISCUSSION

Beamon sues Tyson for subjecting her to a hostile work environment and retaliating against her for engaging in protected activity.[1] Beamon contends that she was harassed based on her race and gender, and that she was retaliated against for complaining about a gender *and* race-based hostile work environment.

---

[1] Beamon has abandoned her state law negligence claim. Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. 8 n.10, ECF No. 27-1.

8

**I.  Hostile Work Environment in Violation of Title VII and § 1981**

Beamon asserts hostile work environment claims pursuant to Title VII and § 1981.  To the extent that her claim is based on her gender, § 1981 does not provide a remedy.  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475 (2006) (discussing § 1981 and its application to racial discrimination in the workplace).  But under the circumstances presented here, the Court does not need to decipher whether her claim is based on gender hostility, racial hostility, or both.  Her claim fails regardless of the nature of the discrimination because the harassment she complains about was not sufficiently severe or pervasive to be actionable under Title VII or § 1981.  Whether that conduct was race based or gender based or a combination of both does not matter for purposes of deciding the present motion because both Title VII and § 1981 require evidence that the harassment was sufficiently severe or pervasive to alter the terms and conditions of Beamon's employment.  *See Mendoza v. Borden Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc) (listing the elements of a Title VII sexual harassment claim); *see also Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002) (explaining that the same analysis applies to Title VII and § 1981).  Notwithstanding the inappropriateness of the

conduct here, it does not rise to the level of severe or pervasive under the well-established precedent in this Circuit.[2]

To survive summary judgment, an employee asserting a hostile work environment claim must produce evidence from which a reasonable factfinder could conclude that the harassing conduct was objectively and subjectively severe or pervasive. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). For purposes of the present motion, the Court assumes that Schimek's conduct was subjectively offensive. Therefore, the Court focuses only on whether it was *objectively* severe or pervasive.

To make this determination, the Court considers the following factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* The Court must look at "the totality of the circumstances," and view the harassing conduct "in context, not as isolated acts." *Mendoza*, 195 F.3d at 1246. Here, construing the evidence in favor of Beamon, the record establishes the following.

---

[2] Tyson also contends that Beamon's hostile work environment claim is time barred and that it is entitled to judgment as a matter of law on its *Faragher/Ellerth* affirmative defense, but the Court finds it unnecessary to address these arguments because it grants Tyson summary judgment on other grounds.

10

Beamon's conduct, although rude and socially unacceptable, occurred relatively infrequently. Over an eleven-month period, Schimek showed or attempted to show Beamon pornographic videos on four occasions; made two isolated arguably sexually-related comments; and got into one heated altercation that involved no physical contact. Other than Schimek's angry tone and "not happy" facial expressions, there is no evidence of ongoing, daily, or even periodic harassment. Pl.'s Dep. 118:9-10.

In addition to the relative infrequency of the harassment, it was not sufficiently severe under the standard established in this Circuit for the creation of a hostile work environment. Some courts have recognized that the "constant[] and pervasive[] display[]" of pornography in the workplace can contribute to a hostile work environment. *Greene v. A. Duie Pyle, Inc.*, 371 F. Supp. 2d 759, 763 (D. Md. 2005), *aff'd*, 170 F. App'x 853 (4th Cir. 2006); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995) (recognizing that pornographic pictures might constitute sexual harassment). But Beamon was not subjected to a pervasive display of pornography. She points to three isolated occasions where Schimek briefly showed her pornographic videos on his cell phone. Each time, Beamon glanced at the videos for a few seconds and left. While this display of pornography in the workplace may be offensive, the federal

11

employment laws require more before an employer may be held legally liable for such conduct.

Beamon does point to evidence in addition to the pornographic videos. She claims that Schimek made two sexually related comments—one regarding Beamon's body while she was working on her knees and one general comment about the breasts of black women. Pl.'s Dep. at 61:1-18; 40:19-41:4. These comments certainly demonstrate behavior that most of us would find repugnant in the work place, but the Eleventh Circuit has found far more sexually graphic comments insufficient to support a claim for a hostile work environment. For example, in *Mendoza*, the Eleventh Circuit, sitting en banc, found that an employer's conduct—that included constantly following an employee around, saying "I'm getting fired up," and rubbing his body against the employee—fell "well short of the level of either severe or pervasive conduct sufficient to" constitute a Title VII claim. *Mendoza*, 195 F.3d at 1247.

As to Beamon's claim that Schimek yelled at her, the Court is sympathetic that she had to endure such rude behavior, but as the Supreme Court has recognized, Title VII is not a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowners Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). It does not prevent "the ordinary tribulations of the workplace, such as the sporadic use of

12

abusive language, gender-related jokes, and occasional teasing." *Id.*

The record also clearly establishes that Schimek did not touch Beamon, never solicited sexual favors from her, and did not expose himself to her. It is also undisputed that Schimek never physically harmed Beamon or even attempted to harm her. The closest Beamon gets to contending that Schimek's conduct was physically threatening is her subjective feeling that she feared Schimek would attack her during the November 7 altercation. Beamon Dep. 69:16-17.

Finally, the record contains no evidence that Schimek's behavior interfered with Beamon's job performance. Beamon continued to work at Tyson for nearly two more years after the last altercation with Schimek, and she reported no additional incidents of harassment.

Based on the present record, the Court finds that no reasonable juror could conclude that Beamon was subjected to gender or race-based harassment that was sufficiently severe or pervasive to alter the terms and conditions of her employment. Accordingly, Tyson is entitled to summary judgment on Beamon's hostile work environment claim.

## II. Retaliation in Violation of Title VII and § 1981

Beamon also contends that Tyson retaliated against her for complaining about harassment, in violation of Title VII and

13

§ 1981. *See* 42 U.S.C. § 2000e-3(a). Beamon does not point the Court to direct evidence of retaliation, so the Court analyzes her retaliation claims using the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

Tyson contends that Beamon cannot make out a prima facie case of retaliation because she did not suffer an adverse employment action. It is undisputed that Tyson never disciplined, demoted or terminated Beamon's employment after she complained of harassment by her supervisor. Although other materially adverse actions against an employee can constitute an adverse employment action, Beamon points to no such conduct here. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (defining a materially adverse action as one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination") (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Beamon points to two allegedly adverse

14

employment actions: (1) the altercation on November 7, and (2) Tyson initially offering to settle her workers' compensation claims on the condition that she sign a global release.

Tyson took no adverse action against Beamon related to the altercation on November 7. To the contrary, it took steps to protect Beamon from further harassment, including changing Schimek's work schedule so that he did not work with Beamon again after November 7. To the extent that Beamon contends that Schimek's confrontation with Beamon constituted an adverse employment action, the Court finds that such conduct would not dissuade a reasonable employee from complaining about unlawful harassment, particularly given Tyson's response to the altercation. Even if Schimek's confrontation was motivated by his personal retaliatory animus against Beamon, his conduct on November 7 was not sufficiently adverse under the totality of the circumstances to constitute an adverse employment action.

The Court also finds that Tyson's handling of Beamon's workers' compensation claim did not constitute an adverse employment action. Beamon claims that Tyson retaliated against her by conditioning settlement of her workers' compensation claims on signing a global release. But notably, Tyson accepted Beamon's counteroffer for $25,000 *without* a global release. Crosson Dep. 42:18-43:13. Beamon got exactly what she asked for.

15

In sum, no reasonable jury could conclude that Beamon suffered an adverse employment action in retaliation for her complaints about harassment in the workplace.  Accordingly, Tyson is entitled to summary judgment on Beamon's retaliation claims.

## CONCLUSION

For the reasons stated above, the Court grants Tyson's motion for summary judgment as to each of Beamon's claims.

IT IS SO ORDERED, this 20th day of October, 2015.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
